UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**EDMUND WANAT,**

      **Plaintiff,**                              **Case No. 2:22-cv-4162**

    v.                                    **Judge Edmund A. Sargus, Jr.**
                                              **Magistrate Judge Chelsey M. Vascura**

**LOWE'S HOME CENTERS, LLC,**

      **Defendant.**

## OPINION AND ORDER

This matter is before the Court on Defendant Lowe's Home Centers, LLC's Motion for Summary Judgment. (Mot., ECF No. 15.) Lowe's argues that there are no genuine issues of material fact in Plaintiff Edmund Wanat's case for age discrimination. (*Id.*) Mr. Wanat opposed that Motion (Opp., ECF No. 19), and Lowe's replied (Reply, ECF No. 21). For the reasons below, Lowe's Motion for Summary Judgment (ECF No. 15) is **DENIED**.

**I.    BACKGROUND**

This case involves a dispute between Mr. Wanat and his former employer, Lowe's. Mr. Wanat alleges that he was improperly terminated because of his age, while Lowe's counters that Mr. Wanat was terminated for poor performance.

Mr. Wanat began his career at Lowe's in 2003, working his way up to Store Manager for the Steubenville store in 2018. (Wanat Dep., ECF No. 16-1, 14:01; 16:02–04.)[1] Before accepting the position at the Steubenville store, Mr. Wanat served as the Store Manager at other Lowe's locations. (*Id.* 15:04–24.) As Store Manager, Mr. Wanat was responsible for managing all store operations, which included ensuring compliance with merchandising, security, and safety standards, as well as driving positive customer experiences and sales. (ECF No. 19-3, PageID

---

[1] The Parties each filed excerpts of the deposition transcript of Edmund Wanat, which are referred to collectively by the Court as "Wanat Dep." throughout. (*See* ECF Nos. 16-1, 19-1.)

1

661.) Additionally, the Steubenville store was one of the largest Lowe's stores in Ohio with the highest store volume and the most sales of any Lowe's store in the region. (Butler Dep., ECF No. 19-3, 108:19–24.) [2]

### A. Elizabeth Butler became Mr. Wanat's supervisor in January 2021.

Ms. Butler replaced Mr. Wanat's supervisor James Bailey as District Manager in January 2021. (Wanat Dep., 16:07–13; 17:02–10; Butler Dep., 75:17–25.) Her first impression of the Steubenville store was that of "disarray"—it was "disorganized" and the shelves were not adequately stocked. (Butler Dep., 75:17–25.) She contends that she shared her general concerns with Mr. Wanat within the first 90 days as his supervisor, in March or April 2021, but did not identify specific areas for improvement. (*Id.* 111:12–22; 113:20–23.)

In March 2021, Ms. Butler provided Mr. Wanat with his 2020 year-end annual review which gave him a final ranking of "meets expectations." (ECF No. 16-2, PageID 358–63; 362; Butler Dep., 99:12–21.) Although Mr. Bailey completed this written evaluation before he retired, Ms. Butler was responsible for reviewing the evaluation with Mr. Wanat. (Butler Dep., 97:19–98:13.) The evaluation detailed that Mr. Wanat "had a strong year in total sales," (ECF No. 16-2, PageID 362), but noted that he "faced a lot of challenges," and "struggled with services levels in the store" and with the "freight flow process," which led to "inconsistent store conditions." (*Id.*)

Despite the challenges described in his evaluation and Ms. Butler's general concerns about the store, in July 2021, Mr. Wanat received the "Lowe's Ring Award." (Butler Dep., 144:03–23.) The Ring Award is a "prestigious award" for Lowe's associates who excel in their sales and profits. (*Id.*) Ms. Butler emailed Mr. Wanat to congratulate him. (*Id.*; *see also* ECF No. 19-3, PageID 688.)

---

[2] The Parties each filed excerpts of the deposition transcript of Elizabeth Butler, which are referred to collectively by the Court as "Butler Dep." throughout. (*See* ECF Nos. 16-2, 19-3.)

**B.    Mr. Wanat notified Lowe's of his intent to retire after he received the Ring Award.**

Mr. Wanat contends that it was after he received the Ring Award, in the summer of 2021, that he first informed Ms. Butler of his intention to retire in January 2022. (Wanat Dep., 51:10–21.) But Mr. Wanat concedes that he did not convey his intention to retire in writing at that time. (*Id.* 52:04–17.) And he admits that there were no other witnesses to this conversation between him and Ms. Butler. (*Id.*) According to Ms. Butler, however, Mr. Wanat did not tell her that he planned to retire until several months later. (Butler Dep., 216:15–217:01.)

**C.    Mr. Wanat's evaluations indicated his performance was "off track."**

On August 15, 2021, Ms. Butler provided Mr. Wanat with his mid-year review. (Butler Dep., 117:21–25.) Ms. Butler acknowledges that this was Mr. Wanat's first performance evaluation that conveyed his performance was not meeting expectations. (*Id.* 117:21–25; 172:07–11.) And Mr. Wanat argues that this was also the first time he learned the store was off-track and required improvements. (Opp., PageID 459; Wanat Dep., 29:18–25.)

Ms. Butler informed Mr. Wanat that his store was below the District standards in 14 of 22 measurable metrics. (Butler Dep., 115:20–116:06.) For example, the Steubenville store had a higher percentage of damaged items than other stores in the District. (Mot., PageID 91; Butler Dep., 122:19–24, noting the Steubenville store's percent of damaged items was 23% compared to 18%.) Likewise, Mr. Wanat's store spent more money on overtime pay than other stores. (Butler Dep., 123:05–13, 1.55% spent on overtime, compared to the District average of 1.24%.) Ms. Butler also explained that the Steubenville store "never had full shelves." (*Id.* 125:01–06.)

Mr. Wanat attributes these metrics to problems with the staff under his supervision. (Opp., PageID 459.) He explains that he had to terminate three to four assistant store managers in

2021 alone. (Butler Dep., 79:03–06.) He also disciplined several assistant store managers, for failing to maintain the store standards. (Opp., PageID 459.)

Later in August Ms. Butler conducted her quarterly walk through of the Steubenville store and gave the store a red score card signifying that the store needed improvement. (Butler Dep., 204:03–08.) Ms. Butler sent Mr. Wanat a recap of her findings from her walkthrough with several pictures. (*Id.*; *see also* ECF No. 16-1, PageID 183–201.) The photos show pallets of product laying on the ground outside the store, trash and debris in the bullpen, loose shingles on a pallet at the back curb of the store, and a dead tree laying by the main road. (ECF No. 16-1, PageID 186–88.) Pictures of the interior of the store showed several bays where available inventory was in the store or on the ground, but not in the proper place on the shelves. (*Id.* at PageID 189–96.) Ms. Butler instructed Mr. Wanat that she wanted to see visible and reportable improvement in stocking, inventory replacement, staffing, and treatment of employees, within the next 30 days. (Butler Dep., 179:06–19; *see also* ECF No. 16-1, PageID 183, 201.)

### D. Management conducted more store walkthroughs to monitor Mr. Wanat.

Lowe's argues that to monitor Mr. Wanat's progress and to continue providing feedback, members of the District management team continued to visit the store. Ms. Butler visited the store and emailed Mr. Wanat on September 17, 2021 with a recap of her visits that month. (ECF No. 16-1, PageID 226.) The pictures attached to Ms. Butler's email showed distressed plants from a lack of watering and returns that were not properly returned to the shelves. (*Id.* at PageID 231.) Ms. Butler explained the store continued to show signs of poor recovery—the process of restoring a store back to its proper visual standards. (*Id.* at PageID 226, 229.)

4

In October, both Ms. Butler and Andrea Cunin, the District Human Resources Business Partner, walked the store several times. (ECF No. 16-1, PageID 237–254; Cunin Dep.,[3] 16-3, 17:03–15; 22:01–07.) Notes from both of their visits reflected that the store remained messy and Mr. Wanat continued to struggle to keep the shelves fully stocked. (ECF No. 16-1, PageID 237–254.) The pictures included in Ms. Butler's summary from her October 20, 2021 visit show missing and damaged displays and items out of place throughout the store. (*Id.* at PageID 249, 252–54.) But Ms. Butler also told Mr. Wanat that the store was showing signs of improvement. (*Id.* at PageID 247; Butler Dep., 195:15–22.)

### E. Mr. Wanat was placed on a Performance Improvement Plan.

Despite the store's improvements in October, Ms. Butler made the decision to place Mr. Wanat on a Performance Improvement Plan ("PIP"). To do so, Ms. Butler had to first get the approval of the Human Resources Manager, Teri Reiter. (Reiter Dep.[4], 14:04–07.) Ms. Butler, Ms. Reiter, and Ms. Cunin discussed over the phone the issues that warranted placing Mr. Wanat on a PIP. (*Id.* 31:25–33:03.) Ms. Reiter recalled that those issues included Mr. Wanat's disengagement from his team, his lack of responsiveness to Ms. Butler's feedback about store conditions, and his failure to perform the basic functions of his job. (*Id.* 32:16–20.) After this discussion, all three agreed to move forward with the PIP. (*Id.* 39:06–10.)

On November 5, 2021, Ms. Butler and Ms. Cunin issued Mr. Wanat his PIP and discussed it with him in person. (Wanat Dep., 44:18–25; Butler Dep., 216:03–14.) The PIP gave Mr. Wanat 30 days to improve his performance. (ECF No. 16-1, PageID 255–57.) Ms. Butler, Ms. Reiter, and Ms. Cunin explain that they set his PIP for 30 days, rather than 90 or 120 days,

---

[3] The Parties each filed excerpts of the deposition transcript of Andrea Cunin, which are referred to collectively as "Cunin Dep." throughout. (*See* ECF Nos. 16-3, 19-4.)
[4] The Parties each filed excerpts of the deposition transcript of Teri Reiter, which are referred to collectively as "Reiter Dep." throughout. (*See* ECF Nos. 16-5, 19-5.)

because Ms. Butler and Ms. Cunin had been working with Mr. Wanat for several months. (Reiter Dep., 37:02–07.) Mr. Wanat was given an extra four days to accommodate a previously scheduled vacation, and thus his performance improvement period spanned from November 5, 2021 to December 9, 2021. (Butler Dep., 223:18–224:04; Wanat Dep., 45:15–21; *see also* ECF No. 16-1, PageID 255–57.)

Mr. Wanat had two days to begin implementing performance improvements before he left for vacation on November 8, 2021. (Butler Dep., 223:18–224:17.) Mr. Wanat was set to return from vacation on November 12, 2021, and to have his first follow up discussion regarding the status of his improvements on November 17, 2021. (ECF No. 16-1, PageID 255.) But before he returned from vacation, a series of events took place that resulted in his termination.

   **F.**  **The Steubenville store caught fire while Mr. Wanat was on vacation.**

On November 10, 2021, while Mr. Wanat was on vacation, an outdoor compactor at the Steubenville store caught fire. Because Mr. Wanat was out on vacation, Ms. Butler and Ms. Cunin went to the store to assist with cleanup. (Butler Dep., 240:08; 242:25–243:07.)

On the day of the fire, Senior Asset Protection Manager Candice Petrella emailed Ms. Butler and Ms. Cunin about the fire. (ECF No. 16-1, PageID 258.) She told Ms. Butler and Ms. Cunin that she called Mr. Wanat to inform him that the fire department was at the store to put out a fire in the trash compactor. (*Id.*) She reported that Mr. Wanat laughed and stated he needed to "go get gasoline." (*Id.*) She claims she reiterated that his store was on fire, and that he laughed again. (*Id.*) But she concedes that his laughter might have been a nervous laugh. (*Id.*) After that, she ended the call. (*Id.*) Mr. Wanat refutes Ms. Petrella's characterization of their phone call and denies laughing or saying he should go get the gasoline. (Wanat Aff., ECF No. 19-2, ¶ 5.)

6

### G. Mr. Wanat inquired about retiring in January 2022.

On November 15, 2021, Mr. Wanat opened an inquiry with Human Resources informing them that he intended to retire in January 2022 and asking about how to receive his unvested stocks. (ECF No. 16-2, PageID 364–76.) He received a response from Lowe's with an article detailing the retirement process and congratulating him on his retirement. (*Id.*) That article explained Lowe's policy requirements under the Long Term Incentive (LTI) plan. (*Id.* at PageID 374–76.) To enjoy full vesting: (1) the manager must be at least age 55 and their age plus years of service must be at least 70; (2) they must submit notice of their intent to retire at least ten days, but not more than 30 days, in advance; (3) the retirement must be at least six months after the grant of the restricted shared; (4) the retirement must be approved by the Lowe's board of board directors or its designee; and (5) the manager must execute a release of all claims. (Felton Dep., ECF No. 16-4, 17:15–23.)

### H. Ms. Butler decided to terminate Mr. Wanat for poor performance and his response to the store fire.

Ms. Butler claims she made the decision to terminate Mr. Wanat sometime between November 12, 2021 and November 18, 2021. (Butler Dep., 250:06–09; 254:01–12; 261:15–24.) She and Ms. Cunin informed Mr. Wanat on November 19, 2021 that he was terminated for poor performance. (Wanat Dep., 50:11–51:09.)

Ms. Butler explained that she decided to terminate Mr. Wanat, rather than let him complete his PIP because she was disappointed in his response to the fire. (Butler Dep., 253:22–254:12.) Although Ms. Butler and Ms. Cunin could not say for certain where Mr. Wanat was taking his vacation, Ms. Cunin described Mr. Wanat's decision not to come to the store during his vacation as a "glaring leadership gap." (Reply, PageID 953; Cunin Dep., 60:08–12.) At the very least, Ms. Butler expected him to call her and inform her about the fire. (Butler Dep.,

7

250:15–251:12.) His failure to call, according to Ms. Butler, demonstrated a lack of genuine care for those who worked in the store. (*Id.*) Mr. Wanat's alleged comments that he planned to get gasoline gave Ms. Butler the impression that he was not committed to making performance improvements. (*Id.*) His response to the fire, coupled with her concerns about his performance, warranted termination. (*Id.* at 253:15–21.)

On December 4, 2021, Ms. Butler hired Melinda Hobbs, a female under the age of 40, to replace Mr. Wanat as the Store Manager of the Steubenville store. (Butler Dep., 272:11–18.)

**I.      Mr. Wanat filed a charge of discrimination and then brought an age discrimination claim against Lowe's.**

Mr. Wanat filed a charge of discrimination with the Equal Employment Opportunity Commission and received a Right to Sue Letter in September 2022. (ECF No. 1-3.) He sued Lowe's in this Court soon after. (Compl., ECF No. 1.) In his Complaint, Mr. Wanat alleges that his termination was a form of age discrimination in violation of the Age Discrimination in Employment Act ("ADEA") and Ohio Revised Code § 4112.01. (*Id.*) Following discovery, Lowe's moved for summary judgment. (Mot., ECF No. 15.) The Court now turns to that Motion.

**II.     STANDARD OF REVIEW**

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant has the burden of establishing there are no genuine issues of material fact, which may be achieved by demonstrating the non-moving party lacks evidence to support an essential element of its claim. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986); *Barnhart v. Pickrel, Schaeffer, Ebeling Co., L.P.A*, 12 F.3d 1382, 1388–89 (6th Cir. 1993). The burden then shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (quoting Fed. R. Civ. P. 56). When

8

evaluating a motion for summary judgment, the evidence must be viewed in the light most favorable to the non-moving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970).

A genuine issue exists if the non-moving party can present "significant probative evidence" to show that "there is [more than] some metaphysical doubt as to the material facts." *Moore v. Philip Morris Cos.*, 8 F.3d 335, 339–40 (6th Cir. 1993). In other words, "the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson*, 477 U.S. at 248; *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (concluding that summary judgment is appropriate when the evidence could not lead the trier of fact to find for the nonmoving party).

**III.   ANALYSIS**

To begin, courts generally analyze age discrimination claims brought under Ohio law using the same framework as claims brought under the federal Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621, *et seq.*; *Minadeo v. ICI Paints*, 398 F.3d 751, 763 (6th Cir. 2005); *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 357 (6th Cir. 1998) ("under Ohio law, the elements and burden of proof in a state age-discrimination claim parallel the ADEA analysis"). Thus, to avoid a surfeit of analysis, the Court analyzes Mr. Wanat's federal and state age discrimination claims together.

Under the ADEA, an employer may not terminate an employee "because of such individual's age." 29 U.S.C. § 623(a)(1). A plaintiff can establish an age discrimination case under the ADEA either by presenting direct evidence or indirect evidence of discrimination. *Willard v. Huntington Ford, Inc.*, 952 F.3d 795, 806 (6th Cir. 2020). Under either approach, the plaintiff must demonstrate by a "preponderance of the evidence . . . that age was the but-for cause of the challenged employer decision." *Id.* (citing *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 177–78 (2009)). Put differently, to survive summary judgment Mr. Wanat must show a

9

genuine dispute of material fact that, if resolved in his favor, could persuade a reasonable juror that age was the but-for cause of his termination." *Pelcha v. MW Bancorp, Inc.*, 988 F.3d 318, 323 (6th Cir.), *cert. denied* 142 S. Ct. 461 (2021).

Mr. Wanat has not presented direct evidence of age discrimination and instead relies on indirect evidence. Without direct evidence, courts apply the *McDonnell Douglas* burden-shifting framework. *Geiger v. Tower Auto.*, 579 F.3d 614, 620 (6th Cir. 2009); *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).

Under this familiar framework, the plaintiff must first establish a prima facie case of age discrimination. *Willard*, 952 F.3d at 807. If the plaintiff produced enough evidence for a prima facie case, the burden "shifts to the employer to offer a legitimate, non-discriminatory reason for the adverse employment action." *Id.* If the employer produces a legitimate reason, "the burden shifts back to the plaintiff to establish that the proffered [reason is] pretext for age discrimination." *Miles v. S. Cent. Hum. Res. Agency, Inc.*, 946 F.3d 883, 887 (6th Cir. 2020).

### A. Mr. Wanat can establish a prima facie case of age discrimination.

To establish a prima facie case of age discrimination, Mr. Wanat must prove: "(1) membership in a protected group; (2) qualification for the job in question; (3) an adverse employment action; and (4) circumstances that support an inference of discrimination." *Blizzard v. Marion Tech. Coll.*, 698 F.3d 275, 283 (6th Cir. 2012) (quoting *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 510 (2002)). A plaintiff can establish the fourth factor by showing that they were replaced by a younger worker, or that similarly situated employees outside the protected class were treated more favorably. *Mickey v. Zeidler Tool & Die Co.*, 516 F.3d 516, 521–22 (6th Cir. 2008) (citation omitted). The burden at the prima facie stage is "not onerous" and is intended only "to eliminate the most common nondiscriminatory reasons for the employer's action."

10

*Provenzano v. LCI Holdings, Inc.*, 663 F.3d 806, 813 (6th Cir. 2011) (citing *Cline v. Cath. Diocese of Toledo*, 206 F.3d 651, 660 (6th Cir. 2000)).

Lowe's concedes that Mr. Wanat satisfies the first and third prongs but argues he cannot prove he was qualified for his job as Store Manager, or that he was replaced by a similarly situated person outside of his protected class. (Mot., PageID 102–05.)

        **i.**        **Mr. Wanat was qualified for his position as Store Manager.**

Mr. Wanat has put forth sufficient evidence that he was qualified for the role as Store Manager. Lowe's attempts to cast Mr. Wanat's supposed performance failures as proof that he was not qualified for the job. (Mot., PageID 103–04.) But Lowe's argument improperly conflates the qualifications prong of the prima facie case with Lowe's burden of putting forth a legitimate nondiscriminatory reason for Mr. Wanat's termination. *Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564, 575 (6th Cir. 2003) (en banc). "A court may not consider the employer's alleged nondiscriminatory reason for taking an adverse employment action when analyzing a prima facie case." *Id.* (citing *Cline*, 206 F.3d at 660–61 (6th Cir. 2000)). Considering Lowe's proffered reason for terminating Mr. Wanat under the first part of the *McDonnell Douglas* analysis would, as the Sixth Circuit explained, "bypass the burden-shifting analysis and deprive the plaintiff of the opportunity to show that the nondiscriminatory reason was in actuality a pretext designed to mask discrimination." *Id.* at 574–75.

At the prima facie stage, the Court focuses on whether Mr. Wanat's objective qualifications show that he was qualified for the position at the time that he was terminated. *Id.* at 575. That inquiry focuses on Mr. Wanat's "education, experience in the industry and demonstrated possession of the required general skills." *Zellner v. Signature Health Servs. Mansfield LLC*, No. 1:11-CV-2796, 2013 U.S. Dist. LEXIS 9050, at *6 (N.D. Ohio Jan. 23,

2013). Evidence that he performed his job at a level which met his employer's legitimate expectations also establishes that he was qualified for the position. *See Meadows v. Ford Motor Co.*, 21 F. App'x 302, 304 (6th Cir. 2001).

Here, it is undisputed that Mr. Wanat had almost two decades of experience with Lowe's and almost a decade of experience performing the job of Store Manager (Wanat Dep., ECF No. 16-1, 14:01–16:04.) Further, in July 2021, he received the Lowe's Ring Award for his contribution to the sales and profits of the Steubenville store. (Butler Dep., 144:08–23.) Before August 2021, Mr. Wanat had never been disciplined or received an unsatisfactory performance review. (*Id.* 117:21–25; 172:07–11.) His lengthy experience, previous satisfactory performance reviews and relatively recently recognition with the Ring Award, indicate that there is no issue of material fact that he was qualified to perform the job of Store Manager. *See Zellner*, 2013 U.S. Dist. LEXIS 9050, at *6 (finding seven years of experience, multiple positive reviews, and accolades from coworkers demonstrated plaintiff was qualified); *Feldmeyer v. BarryStaff, Inc.*, No. 1:16cv954, 2018 U.S. Dist. LEXIS 35033, at *18 (S.D. Ohio Mar. 5, 2018) (Barrett, J.) (holding that plaintiff offered sufficient evidence of his qualifications by demonstrating he had seven years of experience and revenue increased during his tenure).

### ii. Mr. Wanat was replaced by a significantly younger employee.

Lowe's also challenges the fourth element of the prima facie case—that the record supports an inference of discrimination. One way Mr. Wanat can establish the fourth factor is by showing he was "replaced by a significantly younger person." *Corrigan v. U.S. Steel Corp.*, 478 F.3d 718, 727 (6th Cir. 2007). The Sixth Circuit has found that an age difference of six or more years is "significantly younger." *Grosjean v. FirstEnergy Corp.*, 349 F.3d 332, 340 (6th Cir. 2003). Mr. Wanat, who was 57 when he was terminated, was replaced by Melinda Hobbs, who was under the age of 40. (*See* Butler Dep., 272:11–18 (discussing Ms. Hobbs's age); Wanat Aff.,

12

ECF No. 19-2, ¶ 2 (stating Mr. Wanat was 57 years old when he was terminated).) Ms. Butler named Ms. Hobbs the Store Manager for the Steubenville store on December 4, 2021, less than a month after Mr. Wanat was terminated. (*Id.*) Evidence that Ms. Hobbs replaced Mr. Wanat suffices to raise an inference of discrimination.

Lowe's appears to concede that Mr. Wanat was replaced by someone significantly younger by only arguing that Mr. Wanat cannot prove in the alternative that he was treated less favorably than similarly situated individuals outside the protected class. (*See* Mot., PageID 104.) But Mr. Wanat only needs to prove that he was treated less favorably than a similarly situated younger employee if he cannot show he was replaced by a significantly younger employee. *E.g.*, *Tschappatt v. Crescent Metal Prods.*, 798 F. App'x 887, 888 (6th Cir. 2020) (describing the burden of proof under the fourth prong as disjunctive using the word "or"); *Weinrauch v. Sherwin-Williams Co.*, No. 1:18-CV-01696, 2019 U.S. Dist. LEXIS 114728, at *22 (N.D. Ohio July 10, 2019) (requiring plaintiff to show he was treated less favorably only if plaintiff cannot show that he was replaced by significantly younger employee). Because Lowe's replaced Mr. Wanat with a significantly younger employee, and the Court need not analyze whether he was treated less favorably than similarly situated employees at this stage.

Accordingly, Mr. Wanat has produced sufficient evidence for a reasonable finder of fact to conclude he has satisfied his prima facie burden. The burden now shifts to Lowe's to offer evidence of a legitimate, nondiscriminatory reason for terminating Mr. Wanat.

### B. Lowe's offered legitimate nondiscriminatory reasons for Mr. Wanat's termination.

Lowe's offers two reasons for terminating Mr. Wanat that it argues were legitimate, and nondiscriminatory. First, Lowe's says that it terminated Mr. Wanat for poor performance, and second, Lowe's reasons that Mr. Wanat's response to the fire at the Steubenville store on

13

November 10, 2021 demonstrated a failure of leadership. (Mot., PageID 106.) Poor performance is a proper and nondiscriminatory reason for discharge. *See Lefevers v. GAF Fiberglass Corp.*, 667 F.3d 721, 725 (6th Cir. 2012). Therefore, Lowe's has satisfied its burden of production by providing a nondiscriminatory reason for its decision to terminate Mr. Wanat's employment.

   **C.** **Mr. Wanat offered sufficient evidence to create a genuine dispute that Lowe's proffered reasons were pretextual.**

The burden now returns to Mr. Wanat who, to survive summary judgment, must produce sufficient evidence from which a jury could reasonably reject Lowe's explanation of why it fired him. *Miles*, 946 F.3d at 886. To advance his case, Mr. Wanat must offer evidence that creates a question of fact about whether Lowe's proffered reason was a pretext for age discrimination. *Levine v. DeJoy*, 64 F.4th 789, 798 (6th Cir. 2023). "A plaintiff will usually demonstrate pretext by showing that the employer's stated reason for the adverse employment action either (1) has no basis in fact, (2) was not the actual reason, or (3) is insufficient to explain the employer's action." *Id.* (quoting *White v. Baxter Healthcare Corp.*, 533 F.3d 381, 393 (6th Cir. 2008)).

Mr. Wanat primarily asserts versions of the second and third categories above, that Lowe's proffered reasons did not actually motivate its decision or could not warrant termination. (Opp., PageID 470–71.) He makes two arguments to show that Lowe's proffered reasons for his termination were pretextual. First, he argues that Lowe's decision to terminate him less than 10 days into his 30-day PIP reveals that Lowe's was looking for "the quickest route to get rid of [him]." (*Id.*) And second, he argues that Lowe's inconsistent and shifting justifications for his termination suggest that none of the rationales were the true motivation for his termination. (*Id.* at PageID 470.) The Court finds that the combination of his early termination and Lowe's shifting rationales creates a genuine issue of whether he was terminated for legitimate reasons or whether those reasons are pretext for discrimination.

14

      **i.**      **Lowe's terminated Mr. Wanat less than 10 days into his PIP.**

Lowe's decision to give Mr. Wanat less than 10 days to improve his performance before terminating him casts doubt on whether Lowe's ever intended to give him a chance to improve.

Early termination under a PIP can be evidence of pretext if it could lead a reasonable jury to disbelieve the employer's proffered reasons for termination. *See, e.g.*, *Decker v. Alliant Techs., LLC*, 871 F. Supp. 2d 413, 430 (E.D. Pa. 2012) (denying summary judgment for the employer because evidence of early termination before the expiration of the PIP demonstrated inconsistencies in the employer's reasons for termination). Terminating the employee before the expiration of the PIP casts doubt as to whether the employer ever intended to give the employee a chance to improve. *Mathews v. Univ. of Pittsburgh Physicians*, No. 16-1148, 2017 U.S. Dist. LEXIS 56347, at *16 (W.D. Pa. Apr. 13, 2017) (stating that a jury could find the PIP to be a sham because the employer made comments during the PIP about terminating the employee regardless of performance improvements).

Several courts, outside of this Court, however, have gone the other way and found that terminating an employee before the completion of the PIP is insufficient evidence of pretext. *See e.g.*, *Flowers v. Electrolux N. Am., Inc.*, No. 3:20-cv-00517-RJC-DCK, 2022 U.S. Dist. LEXIS 22619, at *29 (W.D.N.C. Feb. 8, 2022) (granting employer's summary judgment motion when employee was terminated two weeks before the 90-day PIP period ended). The Fifth Circuit, for example, found insufficient evidence of pretext when an employer fired an employee on the 57th day of a 60-day PIP. *Owens v. Circassia Pharms., Inc.*, 33 F.4th 814, 834 (5th Cir. 2022). In that case, the employer scheduled the final meeting of the PIP for a Thursday before the conclusion of the PIP on a Sunday. *Id.* The court distinguished that decision as "hardly on the same level as

15

firing someone without warning when policy dictates that discipline be progressive or other evidence showing meaningful departure from policy." *Id.* (citations omitted).

Mr. Wanat's case is more analogous to *Decker* and *Mathews*, and distinguishable from *Owens*. First, unlike in *Owens*, Lowe's placed Mr. Wanat on the shortest available PIP. (Reiter Dep., 18:19–21.) At Lowe's, PIPs typically ranged from 30 to 120 days. (*Id.* 18:21.) After Mr. Wanat was placed on his PIP, he had only two full working days before he left for vacation on November 8, 2021. (Butler Dep., 223:18–224:04.) He returned from vacation on November 12, 2021 and was notified of his termination on November 19, 2021. (*Id.*; *see also* Wanat Dep., 50:20–51:09.) Ms. Butler claims she reached the decision to terminate Mr. Wanat sometime between November 12 and November 18. (Butler Dep., 250:06–09; 254:01–06; 261:15–24.) If the decision to terminate Mr. Wanat occurred on November 12,[5] a reasonable jury could doubt that Ms. Butler or Ms. Cunin ever intended to give Mr. Wanat a chance to improve.

Further, in *Owens*, the employee had 57 days compared to Mr. Wanat's 10 days to demonstrate improvement. That the employee was allowed to complete most of the PIP, strengthened the employer's argument that the employee would be unable to make the required improvements in the remaining three days. But Mr. Wanat completed less than half of his PIP, weakening Lowe's argument that he would be unable to make the required improvements before the PIP expired. A reasonable jury could find Mr. Wanat's early termination challenges the credibility of Lowe's justification for his termination.

---

[5] Although the Parties agree that Ms. Butler informed Mr. Wanat of his termination on November 19, the record is less clear on what day Ms. Butler and Ms. Cunin made the decision to terminate him. (*See* Butler Dep., 250:06–09; 254:01–06; 261:15–24.) This discrepancy in the record creates a question of fact for the trier of fact.

16

### ii. Lowe's shifting rationales for termination suggests pretext.

Lowe's explains that Mr. Wanat's early termination is not evidence of pretext because there was an intervening event that led to Mr. Wanat's termination. Specifically, Lowe's argues that the timeline of Mr. Wanat's PIP was accelerated due to his poor leadership following the outdoor store compactor catching fire. (Butler Dep., 253:22–254:12.) His response to the fire demonstrated, according to Ms. Cunin and Ms. Butler, that he would be unable to improve his performance in the remaining time allotted in his PIP. (Butler Dep., 250:15–251:12.) Mr. Wanat argues that Lowe's shifting and conflicting reasons for his termination further support an inference of pretext. (Opp., PageID 468, 470–71.)

"An employer's changing rationale for making an adverse employment decision can be evidence of pretext." *Thurman v. Yellow Freight Sys., Inc.*, 90 F.3d 1160, 1167 (6th Cir. 1996). "Shifting justifications over time calls the credibility of those justifications into question." *Cicero v. Borg-Warner Auto., Inc.*, 280 F.3d 579, 592 (6th Cir. 2002). At bottom, "pretext is a common-sense inquiry into whether the employer took the adverse employment action for the stated reason or not." *Chen v. Dow Chem. Co.*, 580 F.3d 394, 400 n.4 (6th Cir. 2009). The inquiry is thus whether the changes in the employer's rationale occurred and whether those changes could lead a rational factfinder to conclude that currently proffered justification is false. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142–43 (2000).

But providing additional, nondiscriminatory reasons for termination that do not conflict with the stated reason does not show pretext. *MacDonald-Bass v. J.E. Johnson Contracting, Inc.*, 493 F. App'x 718, 726 (6th Cir. 2012).

Poor leadership and poor performance are not inherently conflicting rationales. But Lowe's shifting reliance on the reason for its decision to terminate Mr. Wanat calls into question the credibility of both justifications. In its motion for summary judgment, Lowe's unequivocally

17

states "Lowe's has offered a legitimate, nondiscriminatory reason for Plaintiff's termination: poor performance." (Mot., PageID 98, 106–07.) Poor performance was also the explanation Mr. Wanat received for his termination on November 19, 2021. (*Id.* at PageID 98.) But then, its brief, Lowe's states "Butler, Cunin and Reiter were consistent in their reason why Plaintiff's employment was terminated–poor leadership." (Reply, PageID 952.) To reconcile these incongruencies, Lowe's explains that these justifications are "not two separate reasons" for Mr. Wanat's termination. (*Id.* at PageID 955.)

Further, Lowe's explanation that Mr. Wanat demonstrated poor leadership is based on the factual allegation that Mr. Wanat suggested he go get gasoline when Ms. Petrella informed him that the outdoor compactor was on fire. (Reply, PageID 952; Mot., PageID 97.) Mr. Wanat disputes ever making that comment. (Wanat Aff., ECF No. 19-2, ¶ 5.)

Questions about Mr. Wanat's credibility or whether he made the gasoline comments are questions of fact and credibility reserved for the jury. *Blanchet v. Charter Communs., LLC*, 27 F.4th 1221, 1226 (6th Cir. 2022) ("Credibility determinations, the weighing of evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge.") Lowe's argues the Court should not consider Mr. Wanat's affidavit where he proclaims he never made the gasoline comment because his deposition testimony conflicts with his affidavit. *See Cleveland v. Pol'y Mgmt. Sys. Corp.*, 526 U.S. 795, 806 (1999) (explaining a party cannot avoid summary judgment with an affidavit that contradicts prior testimony). But Mr. Wanat's deposition testimony and his affidavit do not conflict. Mr. Wanat testified during his deposition that although he remembers Ms. Petrella calling him about the fire, he did not recall how he responded to her during that call. (Wanat Dep., 49:02–03.) In other words, Mr. Wanat never admitted saying he should "go get the gasoline" in response to the fire in the outdoor compactor.

18

Thus, a genuine issue of material fact exists regarding whether Mr. Wanat was terminated for poor leadership, poor performance, or some other potentially discriminatory reason. Mr. Wanat has put forth sufficient evidence to allow a reasonable jury to disbelieve Lowe's explanation for terminating him. Giving him less than half of the performance improvement period suggests Lowe's never intended to allow Mr. Wanat to improve. Lowe's inconsistent reliance on poor performance or poor leadership as the motivator for its decision to terminate Mr. Wanat calls into question the credibility of each justification. Together, the early termination and inconsistent justification for Mr. Wanat's termination give rise to a genuine issue of material fact as to whether Lowe's proffered reasons for terminating Mr. Wanat were pretextual. Accordingly, the Court **DENIES** Lowe's motion for summary judgment.

## IV.    CONCLUSION

Mr. Wanat has presented sufficient evidence to establish all the elements of his prima facie case and to rebut Lowe's proffered nondiscriminatory reason for the termination decision. Genuine questions of fact remain about whether age had a determinative influence on Lowe's decision to terminate Mr. Wanat's employment, or whether Lowe's proffered reasons were pretext for age discrimination. Thus, the Court **DENIES** Lowe's Motion for Summary Judgment. (ECF No. 15.)

This case remains open.

**IT IS SO ORDERED.**

**5/2/2024**                                                    **s/Edmund A. Sargus, Jr.**
**DATE**                                                         **EDMUND A. SARGUS, JR.**
                                                                 **UNITED STATES DISTRICT JUDGE**